UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 18-21136-CIV-UNGARO

HEATHER NELSON,

    Plaintiff,

vs.

PURPLE LOTUS SOUTH BEACH, LLC,
SCIANNO INTERNATIONAL CORP,
JAMES SCIANNO, individually, and
KRISTIE McDONALD, individually,

    Defendants.
_____/

## AMENDED COMPLAINT

Plaintiff Heather Nelson ("Plaintiff") hereby sues Purple Lotus South Beach, LLC ("PLSB"), Scianno International Corp ("SIC"), James Scianno ("Scianno"), and Kristie McDonald ("McDonald") (jointly "Defendants") and alleges as follows:

### INTRODUCTION

1. This is an action for unpaid wages and retaliation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").

2. Plaintiff seeks damages within this court's jurisdictional requirements, a reasonable attorneys' fee and costs, and all other remedies allowable by law.

### PARTIES, JURISDICTION AND VENUE

3. PLSB is and was a Florida corporation conducting business in Miami-Dade County, Florida during the relevant period.

4. Scianno is and was an owner and operator of PLSB, which conducted business in Miami-Dade, Florida during the relevant period.

5. Scianno is and was an owner and operator of PLSB, which conducted business in Palm Beach County, Florida during the relevant period.

6. SIC is and was a Florida corporation that conducted business in Palm Beach County, Florida during the relevant period.

7. Plaintiff was jointly employed by Defendants and performed work for Defendants in Miami-Dade and Palm Beach County, Florida.

8. Venue is proper in this Court because Defendants transact business in this District, one or more of the Defendants maintain a principal place of business in this District, Defendants employed Plaintiff in this District, and one or more of claims arose within the District.

## GENERAL ALLEGATIONS

A. **Defendants' Business And Unlawful Scheme To Deprive Workers Of Overtime Payment Under The FLSA.**

9. Defendants do business under the global brand name of Purple Lotus Kava Bar ("Purple Lotus").

10. Defendants hold Purple Lotus out as one collective brand to the general public.

11. Purple Lotus is comprised of three locations.

12. The South Beach location, which corresponds to PLSB.

13. The West Palm Beach location, which corresponds to SIC.

14. And, a Delray Beach location.

15. All Purple Lotus locations, however, are totally or partially owned by the same individuals—Scianno and McDonald.

16. Scianno and McDonald are married.

17. All three Purple Lotus locations are controlled by Scianno and McDonald.

2

18. As the owners of Purple Lotus, Scianno and McDonald customarily and regularly intermingled the employees of all three locations.

19. Plaintiff, for example, worked at both the South Beach and West Palm Beach locations on a weekly basis.

20. On one or more occasions, Plaintiff also worked at the Delray Beach location.

21. Regardless of what location she worked at, Plaintiff reported to Scianno.

22. Plaintiff also reported to McDonald from time to time.

23. The multiple Purple Lotus locations shared goods and materials.

24. By way of example, Plaintiff was routinely asked to pick up goods from the Delray Beach Location and take them to the South Beach Location.

25. Most of Purple Lotus' employees worked at multiple locations.

26. By way of example, an employee named John Plumsky worked at both the West Palm and Delray Beach locations.

27. Defendants devised the corporate intermingling scheme as a thinly veiled attempt to deprive employees of the overtime wages required by the FLSA, among other things.

28. Under the FLSA, however, Plaintiff was jointly and collectively employed by all Defendants. *See* 29 U.S.C. § 203.

29. As a result, all hours worked for any of the Defendants must be collectively counted on a weekly basis for purposes of determining whether Plaintiff is owed overtime compensation.

B. **Plaintiff's Employment, Interstate Commerce, And FLSA Coverage.**

30. Plaintiff became employed by Defendants on or around January 21, 2015.

31. Plaintiff ceased working for Defendants on or around December 4, 2017.

32. Plaintiff worked as a bartender for Defendants.

33. Upon information and belief, PLSB's annual volume of sales or business exceeded $500,000 during the relevant period.

34. Upon information and belief, SIC's annual volume of sales or business exceeded $500,000 during the relevant period.

35. Purple Lotus' collective annual volume of sales or business easily exceeded $500,000 during the relevant period.

36. At all relevant times, Defendants employed two or more employees, including Plaintiff, that customarily, continually, and regularly handled goods and materials that i) were purchased from a person or entity outside the state of Florida and/or ii) were purchased in Florida but had previously traveled through interstate commerce.

37. Upon information and belief, Defendants obtained and solicited funds from non-Florida sources, accepted funds from non-Florida sources, used telephonic transmissions going over state lines to do its business, transmitted funds outside the State of Florida, used electronic means to market and run their business in a way that was not limited to Florida, and otherwise regularly engaged in interstate commerce during the relevant period.

38. Defendants, upon information and belief, accept credit card payments, wire transfers, and other forms of payments that are made or processed outside the state of Florida.

39. Defendants are employers engaged in interstate commerce and subject to the FLSA.

C. **Defendants' Illegal Payment Practices.**

40. During her employment with Defendants, Plaintiff frequently worked over 40 hours a week.

41. Defendants never kept time records of the hours worked by Plaintiff.

42. Instead, Defendants simply paid Plaintiff on a per-shift basis.

43. Generally, Plaintiff worked at the South Beach location at least three times a week.

44. Before virtually every South Beach shift, Plaintiff was required to stop at the Delray Beach location to pick up goods, supplies, and materials.

45. By way of example, Plaintiff would pick up Kava and Kraton to be transported to the South Beach location.

46. Defendants Scianno and McDonald reside in Delray Beach.

47. Scianno advised Plaintiff that he did not like to travel to the South Beach location because of the commute.

48. Therefore, Scianno and McDonald used Plaintiff as a courier.

49. Plaintiff customarily and regularly arrived at the Delray Beach location around 10:30 AM to pick up the daily goods and materials.

50. This is when Plaintiff's workday began for purposes of the FLSA.

51. When Plaintiff arrived at the South Beach location, she was responsible for opening and preparing the entire location before it was opened to the public.

52. Similarly, Plaintiff was responsible for closing, cleaning, ordering, and arranging the entire South Beach location on all of her shifts.

53. Plaintiff's South Beach shifts often ended around 2 AM.

54. All of Plaintiff's preliminary and postliminary activities related to her daily shifts are compensable under the FLSA.

55. Plaintiff customarily and regularly worked over 40 hours a week even if one were to exclusively account for the work she performed for the South Beach location.

56. But, Plaintiff performed more work than that.

57. Plaintiff also worked at the West Palm Beach location.

58. When Plaintiff arrived at the West Palm Beach location, she was responsible for opening and preparing the entire location before it was opened to the public.

59. Similarly, Plaintiff was responsible for closing, cleaning, ordering, and arranging the entire West Palm Beach location on all of her shifts.

60. Plaintiff was not given any breaks during her shifts.

61. Plaintiff easily worked over 40 hours a week for the Defendants on a regular basis.

62. Plaintiff, however, was not compensated for overtime wages in accordance with the Fair Labor Standards Act (FLSA).

63. Defendants willfully and intentionally refused to pay Plaintiff in accordance with the FLSA.

64. Defendants failed to keep accurate time records for all hours worked by Plaintiff.

D. **Defendants' Retaliatory Action Against Plaintiff**.

65. Plaintiff filed the initial Complaint in this matter on January 8, 2018.

66. Defendants were served with the Complaint in this matter on March 1, 2018.

67. After being served with the Complaint, Defendants have unlawfully retaliated against Plaintiff in several ways.

68. Prior to the filing of the Complaint, Plaintiff had filed for unemployment compensation benefits with the State of Florida.

69. Plaintiff was awarded unemployment benefits.

70. Plaintiff was discharged by Defendants on December 4, 2017.

71. For several months, Plaintiff received unemployment benefits without issue.

72. Within days of receiving the Complaint, however, Defendants filed a belated letter with the Florida Department of Economic Opportunity Reemployment Assistance Program ("DEO") seeking to challenge Plaintiff's right to unemployment benefits.

73. In fact, Defendants' letter to the DEO did much more than just challenge Plaintiff's entitlement to unemployment benefits. Defendants, through the letter, baselessly accused Plaintiff of stealing from Defendants during her employment.

74. The allegations of theft were made in connection with the use of Venmo—a mobile payment service other employees of Defendants have used without consequence.

75. To try to cloak the baseless allegations with a deceiving layer of legitimacy, Defendants, upon information and belief, began soliciting information from customers.

76. Defendants became so desperate to try to smear Plaintiff's reputation that they, upon information and belief, have offered free drinks for a week to any customer who would succumb to aiding their unlawful scheme.

77. Specifically, the qui-pro-quo free-drink arrangement was communicated by Defendants through one of their bartenders (Ben).

78. Upon information and belief, Defendants have not proposed any such arrangement with respect to collecting information relating to employees of Defendants that have not filed a lawsuit for unpaid overtime.

79. Other individuals employed by Defendants have used Venmo to accept payment from customers while working for SIC or PLSB.

80. To make matters worse, Defendants are attempting to destroy Plaintiff's reputation as retaliation for the filing of this lawsuit by relying on a post-employment "investigation" that, by definition. could not have been the basis for her termination. As a result, the "investigation" could not lend support to the reasons for Plaintiff's discharge—the only issue before the DEO.

81. Defendants know that an after-the-fact witch-hunt has no bearing on unemployment benefits.

82. Yet, Defendants have used the unemployment platform to try to deter Plaintiff from continuing to pursue her FLSA claims.

83. The defamatory letter issued to the DEO was signed by McDonald as the representative of SIC.

84. Upon information and belief, Defendants have also retaliated against Plaintiff by advising customers of Plaintiff's lawsuit.

85. Plaintiff submitted character references as part of the DEO unemployment process.

86. Because Plaintiff filed the present lawsuit, Defendants, through an employee named Ben, advised customers who provided customer references for Plaintiff that the references are being used in a lawsuit filed by Plaintiff.

87. Defendants have even advised at least one customer that they are not allowed in the business because they are supporting Plaintiff.

## COUNT I

## <u>OVERTIME VIOLATION BY PLSB UNDER THE FAIR LABOR STANDARDS ACT AS TO PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED</u>

88. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 87 above as if fully set forth herein.

89. As part of its business, PLSB purchased goods and materials that traveled through interstate commerce.

90. These goods and materials were customarily, continually, and regularly handled by two or more employees, including Plaintiff.

91. Upon information and belief, PLSB obtained and solicited funds from non-Florida sources, accepted funds from non-Florida sources, used telephonic transmissions going over state lines to do its business, transmitted funds outside the State of Florida, used electronic means to market and run its business in a way that was not limited to Florida, and otherwise regularly engaged in interstate commerce during the relevant period.

92. PLSB, upon information and belief, accepted credit card payments, wire transfers, and other forms of payments made or processed outside the state of Florida during the relevant.

93. PLSB is an employer engaged in interstate commerce and subject to the FLSA.

94. During Plaintiff's employment with PLSB, Plaintiff worked overtime hours for which Plaintiff was not compensated at a rate of time-and-a-half his regularly rate of pay as required by the FLSA.

95. Plaintiff is owed unpaid overtime compensation pursuant to the FLSA.

96. In addition, PLSB is liable for double the overtime amounts owed as liquidated damages under the FLSA as a result of its intentional and willful violations for up to the three year statute of limitations afforded by the FLSA.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

a.  Enter judgment for Plaintiff against PLSB under the FLSA;

b.  Award Plaintiff actual damages for the unpaid wages;

c.  Award Plaintiff liquidated damages;

d.  Award Plaintiff attorneys' fees and costs;

e.  Award Plaintiff all recoverable interest; and

f.  Award any other relief this Honorable Court deems just and proper.

## COUNT II

### OVERTIME VIOLATION BY SIC UNDER THE FAIR LABOR STANDARDS ACT AS TO PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED

97. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 87 above as if fully set forth herein.

98. As part of its business, SIC purchased goods and materials that traveled through interstate commerce.

99. These goods and materials were customarily, continually, and regularly handled by two or more employees, including Plaintiff.

100. Upon information and belief, SIC obtained and solicited funds from non-Florida sources, accepted funds from non-Florida sources, used telephonic transmissions going over state lines to do its business, transmitted funds outside the State of Florida, used electronic means to market and run its business in a way that was not limited to Florida, and otherwise regularly engaged in interstate commerce during the relevant period.

101. SIC, upon information and belief, accepted credit card payments, wire transfers, and other forms of payments made or processed outside the state of Florida during the relevant.

102. SIC is an employer engaged in interstate commerce and subject to the FLSA.

103. During Plaintiff's employment with SIC, Plaintiff worked overtime hours for which Plaintiff was not compensated at a rate of time-and-a-half his regularly rate of pay as required by the FLSA.

104. Plaintiff is owed unpaid overtime compensation pursuant to the FLSA.

105. In addition, SIC is liable for double the overtime amounts owed as liquidated damages under the FLSA as a result of its intentional and willful violations for up to the three year statute of limitations afforded by the FLSA.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

a. Enter judgment for Plaintiff against SIC under the FLSA;

b. Award Plaintiff actual damages for the unpaid wages;

c. Award Plaintiff liquidated damages;

d. Award Plaintiff attorneys' fees and costs;

e. Award Plaintiff all recoverable interest; and

f. Award any other relief this Honorable Court deems just and proper.

### COUNT III

### OVERTIME VIOLATIONS AGAINST SCIANNO UNDER THE FAIR LABOR STANDARDS ACT AS TO PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED

106. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 87 above as if fully set forth herein.

107. During the relevant period, Scianno was an owner, corporate officer, and operator of PLSB and SIC (the "Corporate Defendants").

108. During some of the relevant period, Scianno operated the day-to-day activities of the Corporate Defendants, had supervisory authority over Plaintiff, and was partially or totally responsible for paying Plaintiff's wages.

109. Scianno was Plaintiff's employer, joint employer, or co-employer for purposes of the FLSA as the term employer is defined by 29 U.S.C. § 203 during the relevant period.

110. During Plaintiff's employment with Defendants, Plaintiff worked overtime hours for which Plaintiff was not compensated at a rate of time-and-a-half Plaintiff's regularly rate of pay as required by the FLSA.

111. Plaintiff is owed unpaid overtime compensation pursuant to the FLSA.

112. Scianno is also jointly and severally liable for double the overtime amounts owed as liquidated damages under the FLSA as a result of his intentional and willful violation of the FLSA.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

a. Enter judgment for Plaintiff against Scianno under the FLSA;

b. Award Plaintiff actual damages for the unpaid wages;

c. Award Plaintiff liquidated damages;

d. Award Plaintiff his attorneys' fees and costs;

e. Award Plaintiff all recoverable interest; and

f. Award any other relief this Honorable Court deems just and proper.

## COUNT IV

### OVERTIME VIOLATIONS AGAINST MCDONALD UNDER THE FAIR LABOR STANDARDS ACT AS TO PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED

113. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 87 above as if fully set forth herein.

114. During the relevant period, McDonald was an owner, corporate officer, and operator of PLSB.

115. During the relevant period, McDonald was an owner, corporate officer, and operator of SIC.

116. During some of the relevant period, McDonald operated the day-to-day activities of the Corporate Defendants, had supervisory authority over Plaintiff, and was partially or totally responsible for paying Plaintiff's wages.

117. McDonald was Plaintiff's employer, joint employer, or co-employer for purposes of the FLSA as the term employer is defined by 29 U.S.C. § 203 during the relevant period.

118. During Plaintiff's employment with Defendants, Plaintiff worked overtime hours for which Plaintiff was not compensated at a rate of time-and-a-half Plaintiff's regularly rate of pay as required by the FLSA.

119. Plaintiff is owed unpaid overtime compensation pursuant to the FLSA.

120. McDonald is also jointly and severally liable for double the overtime amounts owed as liquidated damages under the FLSA as a result of his intentional and willful violation of the FLSA.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

a. Enter judgment for Plaintiff against Scianno under the FLSA;

b. Award Plaintiff actual damages for the unpaid wages;

    c.    Award Plaintiff liquidated damages;

    d.    Award Plaintiff his attorneys' fees and costs;

    e.    Award Plaintiff all recoverable interest; and

    f.    Award any other relief this Honorable Court deems just and proper.

## COUNT V

### UNLAWFUL RETALIATION BY PLSB UNDER THE FAIR LABOR STANDARDS

121. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 87 above as if fully set forth herein.

122. By filing the Complaint in this lawsuit, Plaintiff engaged in protected activity under the FLSA.

123. PLSB retaliated against Plaintiff for filing the present lawsuit as specifically delineated above.

124. PLSB's retaliatory conduct is intended to chill Plaintiff's willingness to continue to enforce her rights under the FLSA.

125. Reasonable workers would naturally be dissuaded from continuing to support an FLSA lawsuit when faced with the retaliatory conduct Defendants have engaged in.

126. Defendants accusations against Plaintiff are entirely baseless and frivolous.

127. Plaintiff has suffered significant mental and emotional distress because of Defendants' retaliatory conduct.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

    a.    Enter judgment for Plaintiff against PLSB under the FLSA;

    b.    Award Plaintiff actual damages for the unpaid wages;

    c.      Award Plaintiff liquidated damages;

    d.      Award Plaintiff compensatory damages for mental and emotional distress;

    e.      Award Plaintiff his attorneys' fees and costs;

    f.      Award Plaintiff all recoverable interest; and

    g.      Award any other relief this Honorable Court deems just and proper.

## COUNT VI

## UNLAWFUL RETALIATION BY SIC UNDER THE FAIR LABOR STANDARDS

128. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 87 above as if fully set forth herein.

129. By filing the Complaint in this lawsuit, Plaintiff engaged in protected activity under the FLSA.

130. SIC retaliated against Plaintiff for filing the present lawsuit as specifically delineated above.

131. SIC's retaliatory conduct is intended to chill Plaintiff's willingness to continue to enforce her rights under the FLSA.

132. Reasonable workers would naturally be dissuaded from continuing to support an FLSA lawsuit when faced with the retaliatory conduct Defendants have engaged in.

133. Defendants accusations against Plaintiff are entirely baseless and frivolous.

134. Plaintiff has suffered significant mental and emotional distress because of Defendants' retaliatory conduct.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

    a.      Enter judgment for Plaintiff against SIC under the FLSA;

    b.    Award Plaintiff actual damages for the unpaid wages;

    c.    Award Plaintiff liquidated damages;

    d.    Award Plaintiff compensatory damages for mental and emotional distress;

    e.    Award Plaintiff his attorneys' fees and costs;

    f.    Award Plaintiff all recoverable interest; and

    g.    Award any other relief this Honorable Court deems just and proper.

## COUNT VII

### UNLAWFUL RETALIATION BY SCIANNO UNDER THE FAIR LABOR STANDARDS

135. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 87 above as if fully set forth herein.

136. By filing the Complaint in this lawsuit, Plaintiff engaged in protected activity under the FLSA.

137. Scianno retaliated against Plaintiff for filing the present lawsuit as specifically delineated above.

138. Scianno's retaliatory conduct is intended to chill Plaintiff's willingness to continue to enforce her rights under the FLSA.

139. Reasonable workers would naturally be dissuaded from continuing to support an FLSA lawsuit when faced with the retaliatory conduct Defendants have engaged in.

140. Defendants accusations against Plaintiff are entirely baseless and frivolous.

141. Plaintiff has suffered significant mental and emotional distress because of Defendants' retaliatory conduct.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

    a.    Enter judgment for Plaintiff against Scianno under the FLSA;

b. Award Plaintiff actual damages for the unpaid wages;

c. Award Plaintiff liquidated damages;

d. Award Plaintiff compensatory damages for mental and emotional distress;

e. Award Plaintiff his attorneys' fees and costs;

f. Award Plaintiff all recoverable interest; and

g. Award any other relief this Honorable Court deems just and proper.

## COUNT VIII

### UNLAWFUL RETALIATION BY MCDONALD UNDER THE FAIR LABOR STANDARDS

142. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 87 above as if fully set forth herein.

143. By filing the Complaint in this lawsuit, Plaintiff engaged in protected activity under the FLSA.

144. McDonald retaliated against Plaintiff for filing the present lawsuit as specifically delineated above.

145. McDonald's retaliatory conduct is intended to chill Plaintiff's willingness to continue to enforce her rights under the FLSA.

146. Reasonable workers would naturally be dissuaded from continuing to support an FLSA lawsuit when faced with the retaliatory conduct Defendants have engaged in.

147. Defendants accusations against Plaintiff are entirely baseless and frivolous.

148. Plaintiff has suffered significant mental and emotional distress because of Defendants' retaliatory conduct.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

a. Enter judgment for Plaintiff against McDonald under the FLSA;

b. Award Plaintiff actual damages for the unpaid wages;

c. Award Plaintiff liquidated damages;

d. Award Plaintiff compensatory damages for mental and emotional distress;

e. Award Plaintiff his attorneys' fees and costs;

f. Award Plaintiff all recoverable interest; and

g. Award any other relief this Honorable Court deems just and proper.

## JURY TRIAL

Plaintiff hereby requests a trial by jury with respect to all claims so triable.

Dated:  May 1, 2018                              Respectfully submitted,


                                                 By: */s/ J. Freddy Perera*
                                                 J. Freddy Perera, Esq.
                                                 Florida Bar No. 93625
                                                 freddy@pereralaw.com
                                                 **PERERA BARNHART**
                                                 12555 Orange Drive, Suite 268
                                                 Davie, Florida 33330
                                                 Telephone: 786-485-5232

                                                 *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on May 1, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on all counsel or parties of record on the Service List below.

                By: */s/ J. Freddy Perera*
                J. Freddy Perera, Esq.

## **SERVICE LIST**

**David M. Gobeo, Esq.**
**Ford & Harrison, LLP.**
1450 Centrepark Blvd
Suite 325
West Palm Beach, FL 33401
Telephone: (561) 345-7500
Facsimile: (561) 345-7501
Email: dgobeo@fordharrison.com
*Counsel for Defendant*

VIA CM/ECF